DENNIS J. HERRERA, State Bar #139669
City Attorney
CHERYL ADAMS, State Bar #164194
Chief Trial Deputy
JAMES F. HANNAWALT, State Bar #139657
Deputy City Attorney
Fox Plaza
1390 Market Street, Sixth Floor
San Francisco, California 94102-5408
Telephone: (415) 554-3913
Facsimile: (415) 554-3837
E-Mail: james.hannawalt@sfgov.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO,
OFFICER CHHUNMENG TOV, OFFICER ADAM LOBSINGER,
OFFICER VIET HA, OFFICER DAVID LEE,
SGT. STEVEN HASKELL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF CECILIA LAM, SHUT FAN LAM, JOSEPH LAM,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO; OFFICER CHHUNMENG TOV; OFFICER ADAM LOBSINGER; OFFICER VIET HA; OFFICER DAVID LEE; SGT. STEVEN HASKELL; and DOES 6 through 25,<br><br>Defendants. | Case No. 16-CV-2594-KAW<br><br>**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: April 20, 2017<br>Time: 11:00 a.m.<br>Judge: Hon. Kandis A. Westmore<br>Place: 1301 Clay St, Oakland<br><br>Trial Date: Not set |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii
INTRODUCTION ........ 1
ARGUMENT ........ 2
I. PROBABLE CAUSE IS REQUIRED FOR A §836(b) ADVISEMENT BECAUSE POLICE CANNOT HIDE BEHIND A CITIZEN'S ARREST IN PLACE OF MAKING A DETERMINATION WHETHER PROBABLE CAUSE EXISTS ........ 2
A. Penal Code §836(b) Cannot Authorize Arrest Without Probable Cause. ........ 3
B. Plaintiff's Interpretation Of The Application Of Penal Code §836(b) Would Authorize Officers To Administer Illegal Advisements Regarding The Right To Make A Citizen's Arrest. ........ 3
C. Legislative History Supports Probable Cause Requirement As A Pre-Requisite For §836(b) Advisement. ........ 3
D. Probable Cause Is Not A Ministerial Decision. ........ 4
E. No Defendant Officer Had Probable Cause to Arrest Young. ........ 4
1. Probable Cause Is Based On The Totality Of The Circumstances Known To The Officers. ........ 4
2. The Legal Opinions In The Jones Declaration Are Wrong. ........ 5
a. No Officer Had Probable Cause To Arrest Young For Stalking. ........ 5
b. No Officer Had Probable Cause To Arrest Young For "Breaking & Entering." ........ 6
c. No Officer Had Probable Cause To Arrest Young For Trespass ........ 7
d. No Officer Had Probable Cause To Arrest Young For Poisoning ........ 7
II. BECAUSE A PROBABLE CAUSE FINDING IS REQUIRED, PENAL CODE §836(b) DOES NOT CREATE MANDATORY DUTY. ........ 8
III. A DISPATCHER'S CODING A CALL DV WITHOUT AN OFFICER FINDING PROBABLE CAUSE CANNOT TRIGGER A PENAL CODE §836(b) ADVISEMENT ........ 9
A. Plaintiffs' Superficial Interpretation Of Penal Code §836(b) Leads To Absurd And Illegal Results. ........ 9
B. Officers Ha And Lee And Sergeant Haskell Cannot Be Liable For Breach Of Mandatory Duty Under Penal Code §836(b) Based On Their 4 AM Response To 581 Natoma Because The Dispatcher Did Not Code That Call DV. ........ 9

IV. PLAINTIFFS FAIL TO ADDRESS THE SERIES OF DISCRETIONARY DECISIONS FOLLOWING A §836(b) ADVISEMENT THAT DEFEATS PROXIMATE CAUSE IN THIS CASE....10

V. PLAINTIFFS' THEORY ABOUT WHAT MIGHT HAVE HAPPENED IF A CITIZEN'S ARREST ADVISEMENT HAD BEEN MADE IS TOO SPECULATIVE TO ALLOW EITHER THE PLAINTIFFS' STATE LAW OR 14TH AMENDMENT CLAIMS TO GO TO THE JURY....10

VI. PLAINTIFFS' FOURTEENTH AMENDMENT CLAIM FAILS BECAUSE NO SPECIAL RELATIONSHIP EXISTED AND THE DEFENDANT OFFICERS CREATED NO NEW PERIL....12

CONCLUSION....13

# TABLE OF AUTHORITIES

**Cases**

*Angle v. Alamenda County Medical Center*
WL 413738 (N.D. Cal., Feb 13, 2008) ....................11

*Arpin v. Santa Clara Valley Transportation Agency*
261 F.3d 912 (9th Cir.2001) ....................2

*Balistreri v. Pacifica Police Dep't*
901 F.2d 696 (1990) ....................12

*Bell Atl. Corp. v. Twombly*
530 U.S. 544 (2007) ....................12

*Chavira v. Chavez*
WL 12576819 (2014) ....................8

*Covina Manor, Inc. v. Hatch*
133 CA2d Supp. 790 (1955) ....................7

*DeShaney v. Winnebago County Dep't of Soc. Servs.*
489 U.S. 189 (1989) ....................12

*Elder v. Anderson*
205 Cal.App.2d 326 (1962) ....................4

*Fleming v. State of California*
34 Cal.App.4th 1378 (1995) ....................10

*Gasho v. U.S.*
39 F.3d 1420 (9th Cir. 1994) ....................6

*Hopkins v. Bonvicino*
573 F.3d 752 (9th Cir.2009) ....................2

*Independence Min. Co. v. Babbitt*
WL 22721 (1997) ....................4

*Kesmodel v. Rand*
119 Cal.App.4th 1128 (2004) ....................2

*Kinney v. County of Contra Costa*
8 Cal.App.3d 761 (1970) ....................2

*Kuba v. Marine World Joint Powers Authority*
WL 3041234 at *5 (E.D.Cal. Oct. 24, 2006) ....................2

*L.W. v. Grubbs*
92 F.3d 894 (9th Cir. 1996) ....................12

*Landeros v. Flood*
17 Cal. 3d 399 (1976) ..... 11

*Michenfelder v. City of Torrance*
28 Cal.App.3d 202 (1972) ..... 4

*Motley v. Smith*
WL 6988597 (2016) ..... 11

*People v. Hughes*
27 Cal.4th 287 (2002) ..... 6

*Saelzler v. Advanced Group 400*
25 Cal.4th 763 (2001) ..... 10

*Whitcombe v. County of Yolo*
73 Cal.App.3d 698 (1977) ..... 10

**Statutes**

Civil Code §789 ..... 7

Family Code §§6250-57 ..... 8

Family Code §6228(a) ..... 8

Government Code §815.6 ..... 1, 2

Government Code §821 ..... 1

Government Code §845 ..... 8

Government Code §846 ..... 8

Penal Code §459 ..... 6

Penal Code §646.9 ..... 5

Penal Code §836(b) ..... 1, 3, 8, 9, 10, 11

Penal Code §847(b) ..... 2, 3

Penal Code §836 ..... 1, 2, 3, 8, 9

Penal Code §836(a)(2) ..... 8

Penal Code §13701(b) ..... 8

San Francisco Admin Code §37.2(t) ..... 7

U.S.C.A. Const.Amend. 4 ..... 2

## INTRODUCTION

Defendants are not liable for Ms. Lam's murder because enforcement of Penal Code §836(b) cannot be read in isolation from the remaining subdivisions of §836, which are replete with references to the need for probable cause to support an arrest. Subsection (b) does not create liability by characterizing as "ministerial" an officer's good faith exercise of discretion and judgment when responding to a domestic violence call, which is among the most emotionally charged and potentially dangerous type of police work that officers in San Francisco face daily.

The record in this case supports finding the officers involved exercised good faith and reasonable judgment under the totality of the circumstances known to them at the time each officer interacted with the residents of 581A Natoma Street. Without the benefit of hindsight, the officer defendants properly advised Ms. Lam of her rights under the circumstances known to them at the time, and the officers exercised sound judgment and discretion in attempting to defuse a situation that they were repeatedly assured had not escalated to the level of domestic violence.

The officers determined that the call was a disturbance, not a domestic violence call that would trigger Penal Code §836(b). No officer found probable cause to arrest Young on any domestic violence charge based on the totality of what they observed and all the information provided to the respective officers by either Ms. Lam, Mr. Ramirez and/or Mr. Young. The only evidence to the contrary presented by Plaintiffs is a retained expert's declaration rife with erroneous legal conclusions and inaccurate, incomplete, and embellished references to the record.

Any link between Ms. Lam's tragic murder and an officer's failure to give an allegedly mandatory advisement, is stretched to a breaking point by a string of speculative assumptions about the outcome of a series of discretionary decisions that make it impossible to foresee the eventual outcome. The possibility that things might have worked out differently is insufficient evidence to establish proximate cause under the law.

Government Code §815.6, does not provide a basis for liability against individual public employees. California Government Code §821 provides immunity for the individual officers' failure to enforce enactments. Because Penal Code §836, including §836(b), involves officer discretion and

judgment, §836 does not create a mandatory duty that gives rise to public entity liability under Government Code §815.6.

The officers' efforts to help Ms. Lam created no new peril. Young, not the officers, caused Ms. Lam's murder.

## ARGUMENT

### I. PROBABLE CAUSE IS REQUIRED FOR A §836(b) ADVISEMENT BECAUSE POLICE CANNOT HIDE BEHIND A CITIZEN'S ARREST IN PLACE OF MAKING A DETERMINATION WHETHER PROBABLE CAUSE EXISTS

A police officer must have either an arrest warrant or probable cause to make a legal arrest. U.S.C.A. Const.Amend. 4 "[T]he federal Constitution requires police officers to have independent probable cause when effectuating a citizen's arrest ..." *Hopkins v. Bonvicino*, 573 F.3d 752, 774 (9th Cir.2009).

"Under state law, "[a] peace officer who accepts custody of a person following a citizen['s] arrest is not required to *correctly* determine whether the arrest was justified." *Kesmodel v. Rand*, 119 Cal.App.4th 1128, 1137 (2004) (citing *Kinney v. County of Contra Costa*, 8 Cal.App.3d 761, 768, (1970)) (Italics added.); *Arpin v. Santa Clara Valley Transportation Agency*, 261 F.3d 912, 920-921, 924 (9th Cir.2001) In California, where the citizen's arrest is valid under state law, the officer effectuating the citizen's arrest may not be held liable. *Id.* (citing Cal. Penal Code §847(b)). Under federal law, however, an officer's arrest, even if preceded by a citizen's arrest, must be based on probable cause to believe that the arrestee committed a crime. See *Arpin v. Santa Clara Valley Transportation Agency*, 261 F.3d 912, 924 (9th Cir.2001) (internal quotation and citation omitted); see also *Kuba v. Marine World Joint Powers Authority,* 2006 WL 3041234 at *5 (E.D.Cal. Oct. 24, 2006) (denying police officers' motion for summary judgment of qualified immunity on Fourth Amendment claim; holding, relying on *Arpin*, that a "police officer ... is not entitled to hide behind a citizen's arrest in place of making a determination of whether probable cause exists"). Therefore, Defendants must determine whether probable cause exists to make a lawful arrest, or risk violating the constitutional rights of the arrestee, thereby subjecting themselves and the citizen making the arrest to civil liability. (See e.g., *Kesmodel v. Rand*, 119 Cal.App.4th 1128, 1140 (2004) (tenants liable for false arrest and imprisonment after insisting on a citizen's arrest without probable cause.)

**A. Penal Code §836(b) Cannot Authorize Arrest Without Probable Cause.**

The California legislature cannot legalize unconstitutional arrests. In order to give a statute its intended meaning, it must be read as a whole. The California Legislature vested a portion of §836 with language directing officers to make a good faith effort to advise domestic violence victims of their right to make a citizen's arrest. However, the other portions of the statute repeatedly emphasize the need for an arrest to be supported by probable cause, and cannot be ignored. This statute did not create any new right to make an arrest without probable cause. Contrary to Plaintiffs' argument, the language of the statute does not and cannot trigger a duty to make an advisement of a right that does not exist. [Opp. p. 16-17]

**B. Plaintiff's Interpretation Of The Application Of Penal Code §836(b) Would Authorize Officers To Administer Illegal Advisements Regarding The RightTo Make A Citizen's Arrest.**

Penal Code §836(b) applies when police respond to a domestic violence call for service. The person the statute directs the police to advise is a victim of domestic violence (not simply a participant in a domestic dispute). The 4th Amendment to the United States Constitution requires probable cause to make any legal arrest. So probable cause is required for a domestic violence victim to have a right to make a citizen's arrest. Once probable cause exists, §836(b) requires an officer to make a good faith effort to advise the victim regarding their right to make a citizen's arrest. It defies logic to require officers to advise citizens of a right to make an arrest if the arrest would be unsupported by probable cause.

**C. Legislative History Supports Probable Cause Requirement As A Pre-Requisite For §836(b) Advisement.**

The legislative history materials submitted in Plaintiffs' opposition to the present motion provide that the purpose underlying §836(b) is to "inform victim of his or her right to make a citizen's arrest in situations where a misdemeanor occurred out of the officer's presence." [Casper Decl. Exh 24] The legislation was not intended to conflict with other provisions of the law, and was not intended to create a new source of liability for law enforcement. [Casper Decl. Exh 25, p. 2]

### D. Probable Cause Is Not A Ministerial Decision.

Plaintiffs acknowledge that *Michenfelder v. City of Torrance* (1972) 28 Cal.App.3d 202 holds that determining probable cause involves the exercise of officer discretion. [Opp., p. 17:7-8] The Ninth Circuit also views the determination of probable cause as a non-ministerial act. *Independence Min. Co. v. Babbitt* 1997 WL 22721 at fn. 8. Under California law, the distinction between discretionary and ministerial acts is stated in *Elder v. Anderson*, (1962) 205 Cal.App.2d 326, 331: "[W]here the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial, but where the act to be done involves the exercise of discretion and judgment it is not to be deemed merely ministerial." Because determining probable cause requires a consideration of the totality of the circumstances in each case,[1] every determination of probable cause involves the exercise of discretion and judgment by officers, who must weigh the information they received, assess credibility of witnesses, and draw on their knowledge of the elements of applicable crimes before taking action.

### E. No Defendant Officer Had Probable Cause to Arrest Young.

#### 1. Probable Cause Is Based On The Totality Of The Circumstances Known To The Officers.

In determining the legal question of probable cause, the court should place itself in the shoes of the officers at the time they are tasked with deciding whether probable cause exists. The officers were without the benefit of 20/20 hindsight. Plaintiffs present evidence in opposition to the summary judgment motion that was unknown to the officers and was not discovered until after the murder. So anything that happened outside the presence of the officers and/or after the 4 AM civil standby has no relevance in determining whether the officers had probable cause to either make an arrest themselves or advise Ms. Lam that she had the right to make a citizen's arrest.

In exercising their judgment, the officers did not know Young had access to a gun and was capable of murder that night. Plaintiffs' evidence that the sample of the spaghetti sauce stored in the refrigerator tested positive for a chemical used for rodenticide has no place in deciding the present motion, because it can only improperly influence the court's determination of whether Officer Tov had

---

[1] *Illinois v. Gates* (1983) 462 U.S. 213

probable cause to arrest Mr. Young for poisoning. Likewise, photographs of rat poison packaging were not presented to any of the officers before Ms. Lam was murdered, and therefore have no place in deciding the present motion. Armed with the information Officer Tov had at the time, coupled with his training and experience, once he took stock of Ramirez's information, as well as Ms. Lam's information, he appropriately determined that the events described to him and witnessed by him did not rise to the level of probable cause to arrest Young.

Plaintiff's expert, Jones, mischaracterizes Sergeant Haskell's testimony in ¶37 of her declaration. Sergeant Haskell testified that he educated Ms. Lam about her options in the event that domestic violence did occur between her and Young in the future because Ms. Lam repeatedly reassured him that there was no domestic violence present at the time he spoke with her on the scene. The option of a citizens' arrest for domestic violence did not come up because Sgt. Haskell was not aware of, "…any acts that would rise to the level of domestic violence." [Hannawalt Decl. Exh H, p. 79-80] In effect, Sergeant Haskell spoon fed Ms. Lam the opportunity to establish probable cause for either the officers to make a felony arrest or to provide legal justification to advise Ms. Lam of a right to make a citizen's arrest. However, she did not provide officers with such information.

### 2. The Legal Opinions In The Jones Declaration Are Wrong.

Citing only the declaration of Susan Jones ¶17-41 as legal support, Plaintiffs argue that there was probable cause to arrest Young for attempted poisoning, trespass, stalking, and breaking and entering. However, Plaintiffs do not outline the elements of these crimes and they do not provide any analysis regarding how the evidence known to the officers on the scene gave rise to probable cause to suspect that these crimes were committed by Young. Without explanation Jones simply conclusively opines there was probable cause to arrest Young.

#### a. No Officer Had Probable Cause To Arrest Young For Stalking.

Penal Code §646.9 sets forth the elements of stalking under California law:

> (a) Any person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person **and** <u>who makes a credible threat</u> with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family is guilty of the crime of stalking, punishable by imprisonment in a county jail for not more than one year, or by a fine of not more than one thousand dollars

($1,000), or by both that fine and imprisonment, or by imprisonment in the state prison. [Emphasis added]

Jones opines that Officer Tov had probable cause to arrest Young for stalking at the first response to 581 Natoma. [Jones Decl ISO Opp. MSJ ¶ 19] However, there is no evidence in the record that officers were informed of any threat[2] by Young. Likewise, no other officer during a subsequent response to 581A Natoma was advised of any threats of harm by Young. Therefore, an essential element of the crime of stalking under California law is absent from the record. Jones is wrong as a matter of law that there was ever probable cause for any officer to arrest Young for stalking.

**b. No Officer Had Probable Cause To Arrest Young For "Breaking & Entering."**

There is no crime of "breaking and entering" in the California Penal Code. This term is sometimes used as shorthand for burglary, which is presumably what Jones meant in her declaration. Burglary is defined in Penal Code §459 as entering a building with intent to commit larceny or any felony inside the building. When specific intent is an element of the alleged offense, "[p]art of the probable cause analysis must be whether the officers could believe that [the person arrested] had the necessary intent." *Gasho v. U.S.* (9th Cir. 1994) 39 F.3d 1420, 1429 [3] There is no evidence in the record to support a finding that at any time the police responded before Ms. Lam's murder that Young intended to enter 581A Natoma with the specific intent to commit larceny or any felony therein. Thus, there is no evidence to support Plaintiffs' assertion that probable cause to arrest Young for "breaking and entering" existed before the murder took place.

Jones also misstates the record in ¶20 of her declaration. Ms. Lam never reported to the 911 dispatcher before the first police response that Young was trying to break in; she only complained that Young was ringing the doorbell. The doorbell is outside the gate to the landing where the door to Ms. Lam's flat is located [Casper Decl. ISO Opp MSJ Exh 9].

---

[2] Threat is defined by Webster's II Dictionary as "an expression of an intention to inflict something harmful." Even if Young poisoned the spaghetti sauce there is no evidence Young threatened Ms. Lam that he was going to poison her.

[3] To commit burglary, the suspect must have specific intent to commit larceny or a felony within the building. See *People v. Hughes*, 27 Cal.4th 287, 349 (2002).

**c. No Officer Had Probable Cause To Arrest Young For Trespass.**

Without explanation, Jones opines there was probable cause for a trespass arrest. California statutes defining trespass are vast and apply to numerous scenarios, none of which are applicable here. Plaintiffs make no effort to explain which trespass statute was violated. However, it is undisputed that the officers were informed that Young lived at 581A Natoma with Ms. Lam. [Hannawalt Decl. Exh G, p. 68:7-13; Plaintiff's Exh 7 at 66:1-7]. Because the officers had a reasonable, good faith belief that Young resided in the premises, i.e. had lawful possession, the officers did not have probable cause to arrest him for trespass.

A "tenancy at will," although "consensual" in nature, is not based on an express rental agreement. It arises when the tenant takes possession of the premises with the landlord's permission, but for no stated term and without provision for payment of rent. *Covina Manor, Inc. v. Hatch* (1955) 133 CA2d Supp. 790, 793. "At will" tenants cannot be dispossessed instantaneously. The landlord's termination must be preceded by 30 days' written notice per California Civil Code §789. In San Francisco, the general rule is that a person is a tenant if she is "A person entitled by written or oral agreement, sub-tenancy approved by the landlord, <u>or by sufferance</u>, to occupy a residential dwelling unit ..." [Emphasis added] San Francisco Admin Code §37.2(t). The fact that a person is not paying rent does not make her not a tenant, it just gives the landlord a basis to evict. It was reasonable for the officers to conclude that there was no probable cause to arrest Young for trespassing because they were informed he lived in the apartment, and therefore in San Francisco the law afforded him tenant's rights.

**d. No Officer Had Probable Cause To Arrest Young For Poisoning.**

It is undisputed that no officer other than Officer Tov knew about Ramirez's allegation that Young tried to poison Ms. Lam. So Officers Lobsinger, Ha, Lee and Sergeant Haskell had no probable cause to arrest Young for allegedly poisoning Ms. Lam.

The record reflects that Officer Tov reasonably concluded the report of potential poisoning was not credible, and therefore probable cause did not exist to arrest Young. Moreover, if Officer Tov had determined that probable cause existed to arrest Young for poisoning, there would be no reason to advise Lam of her right to make a citizen's arrest because Tov had the right to arrest Young without it.

(See Penal Code §836(a)(2) which states that a peace officer may arrest a person without a warrant when the officer has probable cause to believe that the person to be arrested has committed a felony, although not in the officer's presence.) Unlike a misdemeanor that must be committed in the officer's presence in order for an officer to make an arrest, poisoning is a felony. No advisement under §836(b) was needed to arrest Young for a felony, and Officer Tov is immune from liability for failure to make the felony arrest, Government Code §§845, 846.

Notably, Jones is silent regarding the follow-up investigation by Officer Tov into the poisoning allegation, apparently discounting this portion of the record in reaching her legal opinion that probable cause existed. Without any evidentiary support, Jones characterizes Mr. Ramirez's report of an alleged poisoning as a "credible report" again presumably based on hindsight. In contrast, Officer Tov, who was present at the scene, face to face with both Ramirez and Lam during the course of the events, had more legitimate grounds to assess the credibility of all parties present in close proximity in time to the events, and in light of the totality of the circumstances known to him at 9:30 PM on October 9, 2014 at 581A Natoma, he determined otherwise. [Decl. of Tov ISO MSJ, ¶ 3] It is undisputed that police were never shown the rat poison packaging. And it is undisputed that other than Ramirez's statement during the first police response, neither Ms. Lam nor anyone else ever mentioned to the police that Young may have put rat poison in spaghetti sauce. As a result, Jones' conclusory opinion that probable cause existed to arrest Young is both irrelevant and unwarranted.

## II. BECAUSE A PROBABLE CAUSE FINDING IS REQUIRED, PENAL CODE §836(b) DOES NOT CREATE MANDATORY DUTY.

*Chavira v. Chavez*, 2014 WL 12576819, a domestic violence case in which the court found that a breach of mandatory claim similar to the one alleged in the present case failed to state a claim, is instructive. In *Chavira* plaintiff's claim was premised upon the individual defendants' alleged violation of mandatory duties established by California Penal Code §§836(a)(2), 836(b), and 13701(b) as well as California Family Code §§6250-57 and 6228(a). The court ruled that the sections of the California Penal Code cited by Chavira in support of her Third Cause of Action do not give rise to viable negligence per se claims. *Id.* at *6. The court read Penal Code §836 holistically, finding the

subparts do not stand alone and that the language of §836(a) that an officer "may arrest a person" makes all of §836 discretionary and not mandatory, which led the court to reject plaintiff's argument that section 836(b) created a mandatory duty.

## III. A DISPATCHER'S CODING A CALL DV WITHOUT AN OFFICER FINDING PROBABLE CAUSE CANNOT TRIGGER A PENAL CODE §836(b) ADVISEMENT

### A. Plaintiffs' Superficial Interpretation Of Penal Code §836(b) Leads To Absurd And Illegal Results.

Plaintiffs' argue that what triggers the §836(b) advisement is not whether police respond to a call they determine to involves domestic violence ("DV"), but whether or not the dispatcher codes the call as "DV." [Opp. p. 17-18] Under this interpretation of §836(b), if a dispatcher codes a call DV that turns out to be a verbal dispute between roommates without any familial or sexual relationship, then officers have a mandatory duty to advise someone of the right to make a citizen's arrest – even though there is no domestic violence, no victim, and no basis for a legal arrest. This interpretation of the statute in no way furthers the legislative purpose to "inform victim of his or her right to make a citizen's arrest in situations where misdemeanor occurred out of the officer's presence." [Casper Decl. Exh 24] And if a dispatcher codes a call as a call as "418" (fight) without the DV designation, based on Plaintiff's interpretation of §836(b) the officers are not being called out on a DV call and therefore no advisement is triggered – even if the officers later discover the people involved are married and one person earlier threatened to harm the other outside the presence of the officers. Application of Plaintiff's superficial reading of the statute in that situation would directly contravene the legislative purpose of §836(b). To effectuate the purpose of the statute, it is axiomatic that officers have the discretion to determine whether their response to the call of service, in fact, involves domestic violence.

### B. Officers Ha And Lee And Sergeant Haskell Cannot Be Liable For Breach Of Mandatory Duty Under Penal Code §836(b) Based On Their 4 AM Response To 581 Natoma Because The Dispatcher Did Not Code That Call DV.

Jones embellishes the record at ¶ 25 of her declaration when discussing the third police response to 581 Natoma. There is no evidence in the record that Young was "threatening her again" because there is no evidence Young ever threatened Ms. Lam. Jones is wrong in ¶ 27 and ¶ 28 of her

declaration that the 4 AM call was coded DV by the dispatcher. In fact, the 4 AM call was coded "602." So, applying the same superficial statutory interpretation employed by Plaintiffs' attorneys in their opposition, no officer had a duty to make a §836(b) advisement during the 4 AM police response because the dispatcher coded that call "602" and the officers were called out to a "602" call and not a "DV" call. Therefore Officers Ha, Viet and Haskell cannot be liable for wrongful death based on breach of a mandatory duty.

## IV. PLAINTIFFS FAIL TO ADDRESS THE SERIES OF DISCRETIONARY DECISIONS FOLLOWING A §836(b) ADVISEMENT THAT DEFEATS PROXIMATE CAUSE IN THIS CASE

Plaintiffs' attempt to distinguish *Whitcombe v. County of Yolo*, 73 Cal.App.3d 698 (1977) and *Fleming v. State of California*, 34 Cal.App.4th 1378 (1995) is without merit. Plaintiffs fail to address the fact that *Whitcombe* and *Fleming* provide legal authority that proximate cause cannot be established when a governmental defendant's failure to act allegedly caused injury, but the chain of causation included discretionary determinations along the way for which no liability could be imposed. Even the opinions expressed in ¶¶ 19, 24, and 36 of the Jones declaration cited in support of Plaintiffs' causation argument [Opp. MSJ, p. 22:12] are couched in terms of possibilities and speculation, without addressing the fact that the decisions about custody, protective orders, and release of Young all would have involved a series of discretionary decisions which cannot be predicted and for which defendants cannot be liable.

## V. PLAINTIFFS' THEORY ABOUT WHAT MIGHT HAVE HAPPENED IF A CITIZEN'S ARREST ADVISEMENT HAD BEEN MADE IS TOO SPECULATIVE TO ALLOW EITHER THE PLAINTIFFS' STATE LAW OR 14TH AMENDMENT CLAIMS TO GO TO THE JURY

"[P]roof of causation cannot be based on mere speculation, conjecture and inferences drawn from other inferences to reach a conclusion unsupported by any real evidence, or on an expert's opinion based on inferences, speculation and conjecture." *Saelzler v. Advanced Group 400*, 25 Cal.4th 763, 775 (2001) (expert's opinion was speculative that additional security at an apartment complex would have prevented an assault on plaintiff). A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, "it becomes the duty of the court to ensure that the defendant prevails." Id. at 775–776.

Here, Plaintiffs speculate that Young might not have murdered Ms. Lam, if Ms. Lam were advised that she could make a citizen's arrest, and Ms. Lam made a citizen's arrest, and the police chose to take Young into custody in the absence of their determination there was probable cause for an arrest, and Young was held long enough to obtain a protective order, and Young would have been more likely to obey a protective order than the law that required him not to kill another human being. There are too many contingencies and uncertain possibilities in the chain of events between a §836(b) advisement and Lam's murder for the murder to be natural, foreseeable consequence of the officer defendants' not providing a §836(b) advisement.

Plaintiffs' cite to *Motley v. Smith* 2016 WL 6988597 as authority for causation is misleading. That opinion involved a ruling on a Rule 12(b) motion to dismiss where no proof is required and the court was required for purposes of the motion that treat factual allegations as true. *Id* at *7. The rule is different when ruling on a motion for summary judgment. Here Plaintiffs must present evidence of causation, not just allegations.

Plaintiffs' reliance on *Landeros v. Flood* (1976) 17 Cal. 3d 399 to establish proximate cause on the record in this case is also misplaced. The cases are clearly distinguishable. Unlike in *Landeros*, there is no evidence in the record that defendants had knowledge of physical abuse and failed to act on that information. Unlike the infant in *Landeros*, the murder victim in the present case was an adult who had no physical signs of injury, did not present any behavioral signs that she was a domestic violence victim, and who expressly denied that she was threatened or harmed by her eventual killer.

*Angle v. Alamenda County Medical Center* (N.D. Cal., Feb 13, 2008) 2008 WL 413738 also does not support a finding that Lam's murder was foreseeable in the absence of a §836(b) advisement. There, plaintiff alleged he was beaten by sheriff's deputies because he was released from the care of mental health providers without treatment. In *Angle*, plaintiff speculated things would have turned out differently if he had proper mental health treatment because treatment might have prevented him from spitting on the sheriff's deputies, which plaintiff alleged caused the deputies to beat him. Just like Angle's beating was not a foreseeable consequence of failing to provide mental health treatment, Lam's murder was not a natural, foreseeable consequence of failure to provide an 836(b) admonition. In *Angle*, the court granted summary judgment in favor of mental health defendants who allegedly

released plaintiff too soon and without treatment because these were not a cause in fact of the beating he received. Here, the failure to advise Ms. Lam that she could make a citizen's arrest was not the cause in fact of her murder. Young shooting Ms. Lam was the unpredictable cause of her murder.

## VI. PLAINTIFFS' FOURTEENTH AMENDMENT CLAIM FAILS BECAUSE NO SPECIAL RELATIONSHIP EXISTED AND THE DEFENDANT OFFICERS CREATED NO NEW PERIL

The Supreme Court has determined that state actors have no general constitutional duty to protect members of the public at large from crime. *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 1004 (1989) ("[W]e conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."). A duty to protect may arise when there is a "special relationship" between a member of the public and state officials. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 700 (1990), abrogated on other grounds by *Bell Atl. Corp. v. Twombly*, 530 U.S. 544 (2007). However, the Ninth Circuit has determined that state officials' mere knowledge that a member of the public is at risk of domestic violence is insufficient to create a "special relationship" that gives rise to a duty to protect. *Id.*

Plaintiffs' argument that Young may have gotten access to a gun during the civil standby is completely speculative, as is their argument that Young was "emboldened" by the civil standby. Moreover, nothing the police did during the encounter, including the civil standby, put Ms. Lam in obvious danger. Ms. Lam, not the police, chose to give Young access to the apartment when she consented to the civil standby. There is no evidence that any harm came to Ms. Lam as a result of the civil standby. Ms. Lam was not injured during the civil standby. Moreover, at the conclusion of the civil standby, Ms. Lam retired to the safety of her home, which is the exact position she would have been in had she not consented to the civil standby. In short, there is no evidence to support Plaintiffs' position that, had the standby not occurred, Young would not have killed Ms. Lam.

The evidence Plaintiffs offer in support of their 14th Amendment claim falls far short of Plaintiffs' burden to show "that the (government) official...acted with deliberate indifference to a known or obvious danger." *L.W. v. Grubbs*, 92 F.3d 894 900 (9th Cir. 1996). There is no evidence to support a finding that the officers present for the civil standby knew that Young would retrieve a gun and later return and murder Ms. Lam, or that it was obvious to the officers under the circumstances.

Ms. Lam denied that Young had any weapons, Young had been searched by the police before entering the apartment and no weapons were found. Young was not combative, threatening or disrespectful. He was observed simply gathering his belongings. Plaintiffs cannot under any circumstances establish that Young retrieved a gun during the civil standby. Even if he did, Plaintiffs cannot establish that the officers knew he did or that officers had reason to believe he would return and murder Ms. Lam. The evidence shows that the civil standby did nothing to increase or decrease the level of danger Ms. Lam would later unexpectedly face from Mr. Young.

**CONCLUSION**

For the reasons set forth above, Defendants are entitled to summary judgment and respectfully ask the court to grant the Defendants' motion for summary judgment in its entirety.

Dated: March 16, 2017

DENNIS J. HERRERA
City Attorney
CHERYL ADAMS
Chief Trial Deputy
JAMES F. HANNAWALT
Deputy City Attorney

By: *<u>/s/ James F. Hannawalt</u>*
JAMES F. HANNAWALT

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, OFFICER CHHUNMENG TOV, OFFICER ADAM LOBSINGER, OFFICER VIET HA, OFFICER DAVID LEE, SGT. STEVEN HASKELL